United States District Court
Southern District of Texas

**ENTERED**
August 26, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JD FIELDS & COMPANY, INC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-1411 |
| | § | |
| SHEET PILE LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a patent infringement case in which the accused infringer, Plaintiff JD Fields & Co. ("JD Fields"), seeks judicial declarations of noninfringement and invalidity. (Dkt. 34 at p. 10). The patents-in-suit are held by Defendant Sheet Pile, LLC ("Sheet Pile"). (Dkt. 34 at pp. 1–2). JD Fields has also sued Sheet Pile under Texas law for tortious interference with a prospective business relationship. (Dkt. 34 at pp. 10–11).

Sheet Pile has moved to dismiss the case for lack of personal jurisdiction as to all claims, for lack of subject matter jurisdiction as to the declaratory judgment claims, and for failure to adequately plead the claim for tortious interference. (Dkt. 26; Dkt. 39). In the alternative, Sheet Pile requests a transfer to the District of New Hampshire. (Dkt. 39 at p. 1). Sheet Pile's motions (Dkt. 26 and Dkt. 39) are **DENIED** in their entirety.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

JD Fields is a steel company headquartered in Houston, Texas. (Dkt. 34 at p. 1). Sheet Pile is a competing company based in New Hampshire. (Dkt. 34 at p. 1). On April 10, 2020, a customer of JD Fields named Dragados issued a purchase order to JD Fields

Case 4:20-cv-01411   Document 66   Filed on 08/24/21 in TXSD   Page 2 of 19

for "a substantial quantity" of sheet pile connectors to which JD Fields had assigned the

model number "MF64." (Dkt. 34 at p. 8). Six days later, JD Fields received a letter from

Sheet Pile's patent enforcement counsel in which Sheet Pile said:

> As you may be aware, Sheet Pile is the owner of several patents covering O-Pile, sheet pile, and connectors.
>
> . . .
>
> It has come to Sheet Pile's attention that you have been marketing with intent to use, manufacture, and/or sell products that may infringe on these valid patents. Specifically, it is my understanding that you are intending to use, manufacture, and/or sell the following product:



1

> . . .
>
> Should you continue to use, manufacture, and/or sell the infringing product, you may be liable for willful infringement. Recent case law on willful infringement shows that even willful blindness is sufficient, whereas here, you undeniably have knowledge and notice of the patents.
>
> . . .
>
> Sheet Pile is prepared to take appropriate legal actions to protect its intellectual property rights. Unless you provide clear evidence that you have ceased and desisted from the wrongful conduct referred to above no later than April 21, 2020, Sheet Pile will have no alternative but to evaluate and take the appropriate legal action.
>
> As you are now on notice of legal claims that Sheet Pile has against you, you are also instructed to preserve all information within your possession, custody, and/or control that is related to your relationship any vendors,

---

[1] The letter included this drawing of the MF64 connector and defined the MF64 connector as the "Infringing Product." (Dkt. 34-4 at p. 2).

owners, contractors, or subcontractors that may have performed work or services, provided direction, or provided materials related to the Virginia Beach project. To be clear, this would include all designs, receipts of materials purchased, drawings/designs/sketches, agreements with contractors or subcontractors, any notes, and your project file. Your obligation to preserve information extends to hard copy files, notes, and all electronically stored information, including but not limited to email communications. For example, all communications between you, any vendors, and/or your contractors or subcontractors must be preserved. This information will be the subject of fact discovery in litigation if this matter is not resolved.

Dkt. 34-4 at pp. 2–4.

Sheet Pile's letter referred to "a similar case [from] 2011" in the Eastern District of Texas in which "Sheet Pile's owner was forced to file a patent infringement suit against Skyline Steel and Arcelor Mittal" that "resulted in a favorable settlement." (Dkt. 34-4 at p. 3).[2] The letter incorporated pages from Skyline Steel's 2012 catalog in which Skyline Steel acknowledged that some of its products were "[c]overed by one or more patents owned by PilePro, LLC" ("PilePro"). (Dkt. 34-4 at p. 3). PilePro is the now-bankrupt company from which Sheet Pile acquired the asserted patents, and PilePro and Sheet Pile are both owned by Roberto Wendt ("Wendt"). (Dkt. 34-4 at p. 2; Dkt. 27-8). In other words, Sheet Pile's letter threatened to file a lawsuit if JD Fields did not respond to the letter to Sheet Pile's satisfaction within five days, and the letter held Skyline Steel up as an example of a vanquished competitor.

According to JD Fields, "Sheet Pile sent a similar letter to . . . Dragados[,]" intending to "derail the purchase order, damage JD Fields' relationship with Dragados, and more broadly to undermine JD Fields' future ability to offer for sale MF64

---

[2] The referenced case was *PilePro LLC et al v. SkyLine Steel LLC et al*, case number 6:10-CV-587 in the Eastern District of Texas. (Dkt. 27-6).

connectors in competition with Sheet Pile." (Dkt. 34 at p. 9). The letter had the intended effect; it "interfered with JD Fields' potential transaction with Dragados, cost JD Fields the profit JD Fields would have made on the transaction and expenses incurred, and damaged JD Fields' customer relationship with Dragados." (Dkt. 34 at p. 9).

Clearly anticipating, based on Sheet Pile's letter, that Sheet Pile would sue it on April 21, 2020, JD Fields struck first and filed this lawsuit. (Dkt. 1). JD Fields initially sought judicial declarations of noninfringement and invalidity and later amended its complaint to add a claim against Sheet Pile under Texas law for tortious interference with a prospective business relationship. (Dkt. 1 at pp. 3–4; Dkt. 34 at pp. 10–11). Sheet Pile now moves for a dismissal or transfer of the case, making the following arguments: (1) the Court lacks personal jurisdiction over Sheet Pile; (2) JD Fields's allegations seeking a declaratory judgment do not "establish an actual case or controversy[;]" (3) JD Fields's tortious interference claim is insufficiently pled; and (4) in the alternative, a transfer to the District of New Hampshire is warranted. (Dkt. 26; Dkt. 39).

## II.   **PERSONAL JURISDICTION**

Sheet Pile first argues that the Court lacks personal jurisdiction over it. The Court disagrees and finds that it may exercise specific jurisdiction over Sheet Pile.

### A.  *Legal standard*

A tribunal's ability to exercise personal jurisdiction over a defendant "depends on the defendant's having such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Company v. Montana*

*Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021) (quotation marks omitted).

There are two kinds of personal jurisdiction: general (or all-purpose) jurisdiction and specific (or case-linked) jurisdiction. *Id*. General jurisdiction, which may only be exercised in states where a defendant is "essentially at home," does not apply here, as Sheet Pile is a New Hampshire limited liability company with its principal place of business in New Hampshire. (Dkt. 26 at p. 7). *Id*. Specific jurisdiction, though, is not limited to the states in which a defendant is considered essentially at home, *id*., and in this case the Court may exercise it.

To be subject to specific jurisdiction in a state, the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id*. (quotation marks and brackets omitted). The defendant's contacts with the forum state must be the defendant's own choice and not random, isolated, or fortuitous; and they "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id*. at 1025 (quotation marks and brackets omitted). Specific jurisdiction can attach if the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Id*. (quotation marks omitted). "[I]n the context of patent litigation, communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction." *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021).[3]

---

[3] Federal Circuit law applies to both substantive and procedural issues, including personal jurisdiction, that are "intimately involved in the substance of enforcement of the patent right[.]"

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quotation marks omitted). In appropriate cases, the Court may evaluate: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 477. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id*. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*.

The plaintiff may meet the burden of establishing personal jurisdiction with prima facie evidence if the district court does not conduct an evidentiary hearing. *M-I Drilling*

---

*Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (quotation marks omitted). Given the factual intertwinement between the claims, both JD Fields's federal declaratory-judgment claim and its Texas state-law tortious interference claim are controlled by Federal Circuit law where the question of personal jurisdiction is concerned. *Id*. at 856–57. That said, the principles recently summarized by the Supreme Court in *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), have long bound every circuit, so the Court's analysis does not turn on whether Federal Circuit or Fifth Circuit personal-jurisdiction cases are cited. And since Texas's long-arm statute reaches "as far as the federal constitutional requirements of due process will allow[,]" the Court need not discuss any additional limitations imposed by Texas law on the exercise of personal jurisdiction. *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 672–73 (E.D. Tex. 2006) ("[T]he analysis of Texas's long-arm statute collapses into the federal due-process inquiry."). !

*Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018). The district court accepts the plaintiff's uncontroverted allegations and resolves in the plaintiff's favor all factual conflicts contained in the parties' affidavits and other documentation. *Id.*

### B. Analysis

The Court concludes that it may exercise specific jurisdiction over Sheet Pile. Sheet Pile's argument to the contrary has two parts: (1) that cease-and-desist letters alone are insufficient to confer specific jurisdiction because they merely inform others of the patent holder's legal rights; and (2) that it has not engaged in any other purposeful activities directed at Texas. (Dkt. 39 at p. 9).

The Court finds Sheet Pile's argument unpersuasive. The Federal Circuit recently clarified that "there is no general rule that demand letters can never create specific personal jurisdiction[,]" *Trimble*, 997 F.3d at 1155, and, in any event, Sheet Pile's purposeful contacts with Texas go far beyond the letter itself. When Sheet Pile sent the letter, its website and promotional materials listed its mailing address as a P.O. Box in Austin, Texas. (Dkt. 27-4 at p. 1; Dkt. 27-5 at pp. 2–3). The phone number provided on the website and in the promotional materials had a 512 area code, which is the area code for Austin, Texas. (Dkt. 27-4 at p. 1; Dkt. 27-5 at p. 2).[4] Sheet Pile's patent enforcement counsel, who sent the letter to JD Fields, is located in Austin, Texas. (Dkt. 34-4 at p. 2). Sheet Pile's letter to JD Fields referenced a patent infringement lawsuit that Wendt, who owns Sheet Pile, filed in the Eastern District of Texas to enforce the patents that are at

---

[4] It appears that, after JD Fields filed this lawsuit, Sheet Pile removed the Austin address and phone number from its website. (Dkt. 27-13).

issue in this case when those patents were owned by PilePro. (Dkt. 27-6; Dkt. 34-4 at p. 3). PilePro, which Wendt also owns, has its principal place of business in Austin, Texas. (Dkt. 27-2; Dkt. 27-3). Sheet Pile recently filed a lawsuit of its own in the Western District of Texas to enforce contractual agreements that PilePro assigned to Sheet Pile in PilePro's bankruptcy proceeding. *See* Western District of Texas case number 1:21-CV-18 at docket entries 7 and 13. These contacts show that Sheet Pile deliberately reached out beyond its corporate home in New Hampshire to enter the Texas market; since JD Fields's claims arise out of or relate to Sheet Pile's purposeful contacts with Texas, specific jurisdiction has attached. *See Ford*, 141 S. Ct. at 1024–25.

Moreover, Sheet Pile, according to JD Fields, "communicated [its] complaint to a third party with the intent that the third party take action directly against [JD Fields's] business interests, something that thereafter occurred." *Campbell Pet Company v. Miale*, 542 F.3d 879, 886–87 (Fed. Cir. 2008). JD Fields alleges that Sheet Pile sent a letter to Dragados in an evidently successful attempt to "derail the purchase order, damage JD Fields' relationship with Dragados, and more broadly to undermine JD Fields' future ability to offer for sale MF64 connectors in competition with Sheet Pile." (Dkt. 34 at p. 9). Sheet Pile's attempt to induce Dragados to rescind its purchase order establishes personal jurisdiction over Sheet Pile. *Id.* (discussing cases from the Ninth and Tenth Circuits) ("In this case, as in those two cases, the defendants' conduct went beyond simply informing the plaintiff that they regarded the plaintiff's products as infringing. According to the plaintiff's allegations, which were credited by the district court for

purposes of the motion to dismiss, the defendants took steps to interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff.").

The Court concludes that the maintenance of this lawsuit in this forum is reasonable in the context of our federal system of government and does not offend traditional notions of fair play and substantial justice. Accordingly, this Court may exercise personal jurisdiction over Sheet Pile.

## III.   SUBJECT MATTER JURISDICTION

Sheet Pile next argues that the Court lacks subject matter jurisdiction over JD Fields's claims seeking a declaratory judgment because JD Fields's allegations seeking a declaratory judgment do not "establish an actual case or controversy." (Dkt. 39 at p. 5). The Court disagrees.

### A. Legal standard

The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, [with irrelevant exceptions], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The test for whether a declaratory-judgment action satisfies the case-or-controversy requirement of Article III of the Constitution "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

In the patent context, a plaintiff bringing a declaratory-judgment action can satisfy the case-or-controversy requirement by alleging facts that show: (1) conduct by the defendant that can reasonably be inferred as demonstrating the intent to enforce a patent; and (2) a real and immediate threat of a lawsuit against the plaintiff based on a product that allegedly infringes the defendant's patent. *Asia Vital Components Company, Ltd. v. Asetek Danmark A/S*, 837 F.3d 1249, 1254–55 (Fed. Cir. 2016). "[A]lthough a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement, there must be a showing of 'meaningful preparation' for making or using that product." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008). The party "claiming declaratory jurisdiction [must] establish that such jurisdiction existed at the time the claim for declaratory relief was filed." *Asia Vital*, 837 F.3d at 1252.

### B. Analysis

The Court concludes that Article III's case-or-controversy requirement is easily met in this case. Sheet Pile's letter to JD Fields listed three of Sheet Pile's patents; specifically referred to one of JD Fields's products, the MF64 connector, as "the infringing product[;]" mentioned a prior lawsuit brought by Sheet Pile's owner against another company alleging infringement of the same patents; said that Sheet Pile would "take the appropriate legal action" within five days unless JD Fields "provide[d] clear evidence that [it] ha[d] ceased and desisted from the wrongful conduct[;]" and "instructed [JD Fields] to preserve all information within [its] possession, custody, and/or control . . . related to the Virginia Beach project" because that "information w[ould] be the subject of

fact discovery in litigation if th[e] matter [wa]s not resolved." (Dkt. 34-4 at pp. 2–4).

Moreover, JD Fields alleges that Sheet Pile sent a similar letter to Dragados, which had

issued a purchase order to JD Fields for "a substantial quantity" of the MF64 connectors,

in a successful attempt to induce Dragados to rescind its purchase order. (Dkt. 34 at pp.

8–9).

JD Fields has alleged facts showing that: (1) at the time that JD Fields filed its

complaint, Sheet Pile was engaging in conduct that can reasonably be inferred as

demonstrating the intent to enforce a patent; and (2) at the time that JD Fields filed its

complaint, there was a real and immediate threat of a lawsuit by Sheet Pile against JD

Fields based on the MF64 connectors. *Id.* at 1253–56. JD Fields has carried its burden

under *MedImmune* and has shown that the case-or-controversy requirement is met.

## IV.    JD FIELDS'S TORTIOUS INTERFERENCE CLAIM

Sheet Pile next argues that JD Fields's claim for tortious interference with a

prospective business relationship is insufficiently pled. (Dkt. 39 at pp. 7–8). The Court

disagrees.

### A.  Legal standard

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a

pleading's compliance with this requirement and is "appropriate when a defendant

attacks the complaint because it fails to state a legally cognizable claim." *Ramming v.*

*United States*, 281 F.3d 158, 161 (5th Cir. 2001).[5] A complaint can be dismissed under

Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the

light most favorable to the plaintiff, do not state a claim that is plausible on its face.

*Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star*

*Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the

Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged. This includes the basic requirement that the
> facts plausibly establish each required element for each legal claim.
> However, a complaint is insufficient if it offers only labels and conclusions,
> or a formulaic recitation of the elements of a cause of action.
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation
> marks and citations omitted).

To satisfy this pleading standard with regard to its claims of tortious interference

under Texas law, JD Fields must plead facts establishing that: (1) there was a reasonable

probability that it would have entered into a business relationship with a third party; (2)

Sheet Pile either acted with a conscious desire to prevent the relationship from occurring

or knew the interference was certain or substantially certain to occur as a result of the

conduct; (3) Sheet Pile's conduct was independently tortious or unlawful; (4) the

interference proximately caused JD Fields injury; and (5) JD Fields suffered actual

damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d

909, 923 (Tex. 2013).

---

[5] The Federal Circuit applies the law of the regional circuit to the evaluation of motions to
dismiss for failure to state a claim. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882
F.3d 1121, 1124 (Fed. Cir. 2018).

Federal law adds another requirement. The federal patent laws bar state-law liability for communications concerning alleged infringement if those communications are not made in bad faith. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374–75 (Fed. Cir. 2004).[6] In order to avoid that bar, a plaintiff pleading a state-law claim for tortious interference with prospective business relations based on communications concerning alleged infringement must plead facts establishing that the patent holder acted "in bad faith" and that the allegations of infringement "were objectively baseless." *Id*. at 1374–77 (quotation marks omitted). JD Fields's allegations of bad faith are subject to the same general Rule 8 pleading standard as the elements of its tortious interference claim. *GMP Technologies, LLC v. Zicam, LLC*, No. 08-C-7077, 2009 WL 5064762, at *3 (N.D. Ill. Dec. 9, 2009); *see also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3161386, at *3 (E.D. Tex. Sept. 30, 2009).

Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are granted sparingly. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

*B. Analysis*

The Court concludes that JD Fields has adequately pled its tortious interference claim. In its motion to dismiss, Sheet Pile contends that: (1) JD Fields has only presented speculation in its attempt to show that Sheet Pile's conduct proximately caused an actual

---

[6] The Federal Circuit applies its own law to the question of whether federal patent law preempts a state-law claim, *Ultra-Precision Manufacturing, Ltd. v. Ford Motor Company*, 411 F.3d 1369, 1376 (Fed. Cir. 2005), so, to clarify, the Court must apply the following principles: (1) Texas law sets forth the elements of tortious interference; (2) Federal Circuit law adds and defines the additional bad-faith requirement; and (3) Fifth Circuit law sets the pleading standards under which JD Field's allegations are evaluated.

loss to JD Fields; and (2) JD Fields has not alleged sufficient facts to show that Sheet Pile acted in bad faith. (Dkt. 39 at p. 8).

The Court disagrees. As to the first argument, JD Fields's allegations regarding causation and loss are concrete, not speculative. JD Fields has alleged that "Dragados, an important customer to JD Fields, issued a purchase order to JD Fields for a substantial quantity of MF64 connectors" and that, less than a week later, Sheet Pile sent a letter threatening a patent enforcement action to both JD Fields and Dragados. (Dkt. 34 at pp. 8–9). Just as Sheet Pile intended, "Sheet Pile's letter interfered with JD Fields' potential transaction with Dragados, cost JD Fields the profit JD Fields would have made on the transaction and expenses incurred, and damaged JD Fields' customer relationship with Dragados." (Dkt. 34 at p. 9). These allegations are not analogous to the ones addressed in the two cases cited by Sheet Pile. In each of Sheet Pile's cases, the plaintiff failed to identify a specific prospective contract or deal that would have been signed or closed before the lawsuit was filed had the defendant not interfered. *See Impala African Safaris, LLC v. Dallas Safari Club, Inc.*, No. 3:13-CV-2175, 2014 WL 4555659, at *8 (N.D. Tex. Sept. 9, 2014) (holding that denial of booth space at a convention that had not taken place when the complaint was filed was not actionable when the plaintiff could only plead that it would be at a competitive disadvantage in its industry); *Official Brands, Inc. v. Roc Nation Sports, LLC*, No. 3:15-CV-2199, 2015 WL 8915804, at *6 (N.D. Tex. Dec. 15, 2015) (holding that the plaintiff had not suffered any actual damages with regard to prospective contractual relations with a third party when the plaintiff already had an executed, unexpired contract with the third party when the lawsuit was filed; the plaintiff

could, and did, sue for tortious interference with the existing contract). This case, by contrast, stems from Sheet Pile's pre-suit interference with a specific purchase order and a specific customer relationship.

JD Fields has also pled sufficient facts regarding the bad-faith requirement. JD Fields alleges that Wendt, the owner of Sheet Pile, "intentionally misle[d] the patent office" by withholding invalidating prior art from the patent examiner so that his prior company, PilePro, could obtain the patents at issue in this case. (Dkt. 34 at pp. 5–10). JD Fields further alleges that Wendt indisputably knew of the invalidating prior art because he helped invent it and that, therefore, "Sheet Pile, and its sole member and manager Mr. Wendt, knew that the patents [at issue in this case] were unenforceable, invalid, and had been procured in bad faith" when they threatened JD Fields and Dragados with a patent infringement lawsuit. (Dkt. 34 at pp. 5–10). JD Fields has sufficiently alleged that Sheet Pile acted in bad faith and that the allegations of infringement contained in Sheet Pile's letter to JD Fields and Dragados were objectively baseless.

## V.    SHEET PILE'S MOTION TO TRANSFER

As an alternative to its motions to dismiss, Sheet Pile requests a transfer to the District of New Hampshire under 28 U.S.C. §1404(a). (Dkt. 26 at pp. 7–8; Dkt. 39 at pp. 9–10). The Court will not transfer the case.

### A. Legal standard

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. §1404(a). In deciding whether to

transfer a case under Section 1404(a), district courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 766–67 (5th Cir. 2016).[7] The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. at 767.

Motions to transfer venue under Section 1404(a) are committed to the sound discretion of the district court. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). The party seeking a transfer has the burden of showing good cause for the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The burden on the movant is "significant[,]" *id.* at 314 n.10, and for a transfer to be granted the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff[.]" *Id. at 315.*

---

[7] The Federal Circuit applies the law of the regional circuit to the evaluation of motions to transfer under 28 U.S.C. §1404(a). *Storage Technology Corp. v. Cisco Systems, Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

*B. Analysis*

Sheet Pile has presented very little argument and almost no facts in support of its transfer request. Apart from a brief description of the relevant law, Sheet Pile's request, in its entirety, reads:

> [Sheet Pile] is a New Hampshire registered Limited Liability Company its [sic] nerve center is the State of New Hampshire. All of [Sheet Pile's] books and records as well as witnesses reside in that State. As a new business it would be an extreme hardship to litigate this case in a forum in excess of 100 miles from where it is located.
> Dkt. 39 at pp. 9–10.

These vague, sparse allegations do not carry Sheet Pile's burden. A party requesting a Section 1404(a) transfer must specifically identify its key witnesses and describe the nature and relevance of the testimony that they would offer if called. *Goodman Co., L.P. v. A&H Supply, Inc.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005). Courts evaluating motions to transfer focus primarily on the availability and convenience of key witnesses; the convenience of one key witness may outweigh the convenience of numerous less important witnesses. *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998). Since Sheet Pile has not identified any particular witness from New Hampshire who is essential to the trial of this case, it appears from the record that Sheet Pile's motion "merely seeks [a] transfer for [Sheet Pile's] own convenience, rather than the convenience of the witnesses or in the interest of justice. A district court will not transfer any case where the only practical effect is a shifting of inconveniences from the non-moving party to the moving party." *Salem Radio Representatives, Inc. v. Can Tel*

*Market Support Group*, 114 F. Supp. 2d 553, 558 (N.D. Tex. 2000) (quotation marks omitted).

Sheet Pile's failure to provide any specific information about its witnesses is fatal for the additional reason that "[c]ourts have observed that intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Houston Trial Reports, Inc. v. LRP Publications, Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999) (quotation marks and brackets omitted); *see also Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 618 (S.D.N.Y. 1995) ("The 'center of gravity' for such a claim is in the district where the alleged infringement occurred."). Here, although it is the plaintiff, JD Fields is also the alleged infringer. Sheet Pile has not provided any information that would justify a departure from the caselaw's general guidance that the center of gravity for this lawsuit accordingly lies in Houston, where JD Fields is headquartered.

This case's connection to Texas is further reinforced by JD Fields's claims for tortious interference with its prospective contract with Dragados. Texas has an interest in providing a forum in which its residents can sue under Texas law for torts committed against them within their home state, and the Court concludes from its review of the record that a transfer of this case to New Hampshire would unduly subvert that interest. *See Goodman*, 396 F. Supp. 2d at 777.

Sheet Pile's request for a transfer is denied.

## VI.    <u>CONCLUSION</u>

Sheet Pile's motions to dismiss or, in the alternative, to transfer this case to the District of New Hampshire (Dkt. 26 and Dkt. 39) are **DENIED** in their entirety.

SIGNED at Houston, Texas, this 24th day of August, 2021.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE